NOTICE
Decision filed 12/19/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 250618-U

NOS. 5-25-0618, 5-25-0619 cons.

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| *In re* Z.H. and J.H.-J., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Champaign County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | Nos. 25-JA-44, 25-JA-45 |
| | ) | |
| Unique H., | ) | Honorable |
| | ) | Robert E. Jacobson, |
| Respondent-Appellant). | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Justices Boie and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The dispositional order is affirmed because the circuit court's findings were not against the manifest weight of the evidence.

¶ 2    The mother, Unique H. (Mother),[1] appeals the circuit court of Champaign County's August 11, 2025, finding that it was in the best interests of her minor children, Z.H. and J.H.-J., to become wards of the court. Mother properly raises one issue on appeal, and that is whether the State met its burden to prove that she is unfit and unable to parent the minors. For the following reasons, we affirm.

_____

[1]Wesley W. is the father of Z.H. and is a party to case No. 25-JA-44. Jaliqwon R. is the father of J.H.-J. and is a party to case No. 25-JA-45. Neither father is a party on appeal.

1

¶ 3                                    I. BACKGROUND

¶ 4    This case began with the filing, on May 2, 2025, of a petition for adjudication of abuse, neglect, or dependency, regarding Unique H.'s biological children, Z.H., who was born late-August 2019 and J.H.-J., who was born mid-January 2021. A petition was filed in case No. 25-JA-44 for Z.H. and a separate petition was filed in case No. 25-JA-45 for J.H.-J. These cases have been consolidated on appeal.[2] Count I of the petitions alleged the minors were "neglected pursuant to 705 ILCS 405/2-3(1)(b) by reason of being a minor under 18 years of age whose environment is injurious to his welfare when they reside with their mother, Unique H., in that said environment exposes the minors to risk of domestic violence." Both minors were taken into protective custody on April 30, 2025.

¶ 5    On May 2, 2025, the Department of Children and Family and Services (DCFS) filed a shelter care report detailing several instances of domestic violence involving Mother and Jaliqwon, the father of J.H.-J., many of which occurred in the minors' presence. According to the report, on April 18, 2025, Jaliqwon was released from prison, and days later, Mother and Jaliqwon were observed chasing each other in the street while the minors were left alone upstairs in the home.

¶ 6    On April 29, 2025, Jaliqwon struck Mother in the presence of both minors. That same day, Mother took J.H.-J. with her to "fight" another individual, during which J.H.-J. was maced. Later that day, Mother and her sister, Ulyssia, became involved in a verbal altercation over the phone, which escalated into a physical fight between Mother, Ulyssia, and Ulyssia's boyfriend in front of J.H.-J., during which Mother was beaten with a bicycle by the boyfriend.

¶ 7    Within the past year, Mother endured several violent episodes involving Jaliqwon, including one in which he shot at her and another in which he choked her until she lost

_____

[2]A supplement to the common law record was filed on December 8, 2025, after briefing was completed.

consciousness, after which J.H.-J. had to wake her. DCFS Investigator De'Ja Echols further noted that this pattern of violence had persisted for two years and that the children were present for many of these events.

¶ 8    On April 30, 2025, Z.H. was interviewed by Echols and stated he had seen "Merch" (Jaliqwon) and Mother fighting, punching each other, and that Mother was injured. He stated Jaliqwon did not live in the home.

¶ 9    Echols also spoke to Suzy Behrensmeyer, Z.H.'s school social worker. Behrensmeyer told Echols that she knew Mother had mental health and behavioral issues, because Mother attended the same school that Z.H. currently attended when she was a child. Urbana Early Childhood Principal, Katie Madigan, reported that J.H.-J. had poor attendance, once arrived with Mother's prescription bottle in his backpack, and is autistic and mostly non-verbal. Echols also spoke with Mother and Jaliqwon, who both stated that they were no longer in a relationship and there was no formal custody agreement.

¶ 10    Mother had four unfounded DCFS reports between 2016 and 2020 and an indicated November 4, 2023, report for substantial risk of physical injury after a domestic altercation with Jaliqwon occurred in a vehicle with the children present. A Law Enforcement Agencies Data System (LEADS) check showed Mother was arrested for domestic battery in 2017. Echols and her supervisor recommended that the court find probable cause and place the minors in temporary DCFS custody.

¶ 11    On May 2, 2025, a shelter care hearing took place. All parents stipulated to probable cause and immediate and urgent necessity for DCFS to be appointed as temporary custodian of the minors. The circuit court found Mother's stipulation was knowing and voluntary.

¶ 12    The matters proceeded to an adjudicatory hearing on July 16, 2025, at which time, Mother stipulated to the allegations of neglect in the petitions. The circuit court entered a written adjudicatory order finding that both minors were in an environment that was injurious to their welfare, as defined by section 2-3(1)(b) of the Juvenile Court Act of 1987 (Act). 705 ILCS 405/2-3(1)(b) (West 2024).

¶ 13    On July 29, 2025, DCFS filed its dispositional report, including an integrated assessment and service plan. The report stated that the minors had been placed with their maternal grandmother. It further detailed past incidents of domestic violence between Mother, and both Jaliqwon, and Wesley, the father of Z.H. DCFS recommended guardianship to DCFS, parental cooperation with services, and scheduling a permanency hearing and a goal of return home within 12 months.

¶ 14    At the July 31, 2025, dispositional hearing, the circuit court reviewed the DCFS report, People's Group Exhibit 2 (four police reports) was admitted without objection, and the court took judicial notice of two additional reports. These police reports detailed individual incidents of domestic violence between Mother and Jaliqwon.

¶ 15    The State and guardian *ad litem* both requested that the minors be made wards of the court due to the serious nature of the events that brought them into custody. Mother argued that she had taken steps to care for the minors and was participating in intact services and cooperating with DCFS. She contended that, for this reason, the minors should be placed in her care.

¶ 16    After considering all relevant facts, the court found it is in the best interest of the minors that they be made wards of the court and deemed neglected and found Mother and both putative fathers unfit. The court specifically cited to Mother's history of instability involving her previous relationships and the minors' repeated exposure to domestic violence.

¶ 17   In a written order on August 11, 2025, the circuit court found that Mother had a longstanding pattern of being in relationships that involved domestic violence. She also had mental health issues, and a history of not being consistently treated or taking medication for those issues. The court found that Mother needed to engage in and successfully complete services related to those issues and engage in and complete any other services to which she was referred by DCFS or ordered by the court, prior to being able to safely parent her children. Mother timely appealed.

¶ 18                                   II. ANALYSIS

¶ 19   The Act (705 ILCS 405/1-1 *et seq.* (West 2024)) provides a step-by-step process to be used in determining whether a child should be removed from his or her parents and made a ward of the court. *In re Arthur H.*, 212 Ill. 2d 441, 462 (2004). The first step of the process begins with the State filing a petition for wardship. *Id.* Then, a temporary custody hearing is conducted at which the court must "determine whether there is probable cause to believe that the child is neglected, whether there is an immediate and urgent necessity to remove the child from the home and whether reasonable efforts have been made to prevent the removal of the child or that no efforts reasonably can be made to prevent or eliminate the necessity of removal." *Id.* If probable cause is found, the child is placed in temporary custody and the process continues. *Id.*

¶ 20   The second step of the process, the adjudicatory hearing, requires the court to determine whether the child was the subject of abuse, neglect, or dependence. *Id.* "Section 2-3(1)(b) of the Act (705 ILCS 405/2-3(1)(b) (West 2000)) defines a 'neglected minor' to include 'any minor under 18 years of age whose environment is injurious to his or her welfare.' " *Id.* "Section 2-3(1)(d) of the Act (705 ILCS 405/2-3(1)(d) (West 2000)) also provides that a 'neglected minor' is 'any minor under the age of 14 years whose parent or other person responsible for the minor's welfare leaves the minor without supervision for an unreasonable period of time without regard for the mental or

5

physical health, safety, or welfare of that minor.' " *Id.* The general definition of "neglect" is the " ' "failure to exercise the care that circumstances justly demand." ' " *Id.* at 463 (quoting *In re N.B.*, 191 Ill. 2d 338, 346 (2000), quoting *People ex rel. Wallace* v. *Labrenz*, 411 Ill. 618, 624 (1952)). "Neglect" is not limited or fixed to this definition. By necessity, "neglect" is fluid and includes both willful and unintentional disregard of duty. *Id.* Similarly, "injurious environment" does not have a fixed definition, but has been interpreted to include " 'the breach of a parent's duty to ensure a "safe and nurturing shelter" for his or her children.' " *Id.* (quoting *In re N.B.*, 191 Ill. 2d at 346, quoting *In re M.K.*, 271 Ill. App. 3d 820, 826 (1995)).

¶ 21    At the adjudicatory hearing, " 'the court shall first consider only the question whether the minor is abused, neglected or dependent.' " *In re A.P.*, 2012 IL 113875, ¶ 19 (2012) (quoting 705 ILCS 405/2-18(1) (West 2010)). "The legislature has stated that the purpose of an adjudicatory hearing is 'to determine whether the allegations of a petition *** that a minor under 18 years of age is *** neglected *** are supported by a preponderance of the evidence.' " *In re Arthur H.*, 212 Ill. 2d at 465 (quoting 705 ILCS 405/1-3(1) (West 2000)). "The plain language of this provision instructs the circuit court to focus solely upon whether the child has been neglected." *Id.* "The legislature made no mention in this provision that during the adjudicatory stage of the proceedings the circuit court is also to determine who may be responsible for the child's neglect, and to assess the proportion of the blame with respect to such individuals." *Id.* If the State fails to prove the allegations of abuse, neglect, or dependence by a preponderance of the evidence, the petition must be dismissed. *Id.* at 464.

¶ 22    "[C]ases involving allegations of neglect and adjudication of wardship are *sui generis*, and must be decided on the basis of their unique circumstances." *Id.* at 463. It is the State's burden to prove allegations of neglect by a preponderance of the evidence, meaning the State must prove the

allegations are more probably true than not. *Id.* at 463-64. Neglect and injurious environment findings are fact driven. *Id.* On review, a finding of neglect will not be reversed unless it is against the manifest weight of the evidence. *Id.* at 464. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident." *Id.* This court will not disturb the circuit court's findings unless the record clearly demonstrates that the court should have reached the opposite result or that the court's determination is unreasonable, arbitrary, and not based on evidence. *In re D.W.*, 386 Ill. App. 3d 124, 139 (2008).

¶ 23    If a finding of abuse, neglect, or dependence is made, the third step is reached, at which point the circuit court must then determine whether "it is consistent with the health, safety and best interests of the minor and the public that he be made a ward of the court." 705 ILCS 405/2-21(2) (West 2024).

¶ 24    On appeal, Mother argues that the circuit court's finding of unfitness was against the manifest weight of the evidence because the only grounds for unfitness were based on Mother's previous relationships with both fathers, which have now come to an end. Since both relationships have come to an end, she contends, there are no longer grounds for unfitness.

¶ 25    Here, the circuit court's finding that Mother was unfit because the minors' environment was injurious to their welfare was not against the manifest weight of the evidence. The evidence established that Mother's relationships with both Jaliqwon and Wesley included numerous instances of domestic violence, and that Mother also engaged in physical altercations with third parties. Based on the evidence before it, the circuit court reasonably inferred that, given Mother's history of being both the aggressor and the victim in numerous altercations, her behavior would likely continue unless she successfully completed services that would enable her to change that behavior and permanently disengage from physical violence of any kind.

7

¶ 26    Mother urges us to consider that the end of her relationship with Jaliqwon and Wesley eliminates the possibility of future exposure to domestic violence. However, given her long history of domestic violence, as well as the violent altercations with third parties, the circuit court's finding was not against the manifest weight of the evidence.

¶ 27

### III. CONCLUSION

¶ 28    For the foregoing reasons, we affirm the August 11, 2025, order of the circuit court of Champaign County.

¶ 29    Affirmed.